# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| **RAY LEE HOLLEY, JR.,** | ) | |
| Plaintiff, | ) | Civil Action No. 7:08cv00629 |
| | ) | |
| **v.** | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| **GENE JOHNSON, et al.,** | ) | BY: PAMELA MEADE SARGENT |
| Defendants. | ) | UNITED STATES MAGISTRATE JUDGE |

The case is currently before the court on the defendants' motion for summary judgment, (Docket Item No. 33), and brief in support thereof, (Docket Item No. 34), collectively, ("Motion").[1] By decision, (Docket Item No. 63), and order, (Docket Item No. 64), dated October 1, 2009, United States District Judge Glen E. Conrad denied the Motion with respect to the claim of qualified immunity. The Motion was then taken under advisement for the remaining issues. The Motion is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B).

## I. Facts

Holley is an inmate at Red Onion State Prison, ("ROSP"). In his Declaration In Opposition To Defendants' Motion For Summary Judgment, (Docket Item No. 57, attachment 1), ("Declaration"), Holley claims that on September 29, 2007, he was outside for recreation when ROSP officers approached and restrained him.

---

[1] In response to Holley's Amended Complaint, (Docket Item No. 82), adding Richard Rowlette as a defendant, a motion for summary judgment, (Docket Item No. 94), and brief in support thereof, (Docket Item No. 95), was filed on Rowlette's behalf seeking to adopt the Motion of the other defendants.

The officers accused Holley of smoking, and he was escorted back into the building. Once inside the building, Holley and his cell were both searched for contraband. During the "shakedown" of Holley's cell, the defendants claim that tobacco products and gang-related materials were found. However, Holley claims that no tobacco products were found, and notes that he did not receive any disciplinary infraction. He also contends that the alleged gang-related materials were his religious materials. The proclaimed religious materials were confiscated, and Holley was denied their return or the opportunity to mail them home. The reason for the confiscation and subsequent denial of the return of the materials was because Holley's professed religion, the Nation of Gods and Earths, also known as the Five Percent Nation of Islam or "Five Percenters," is classified by the Virginia Department of Corrections, ("VDOC"), as a security threat group. Holley claims that the confiscated materials were "[r]eligious in nature, [ ] not [r]acially inflammatory, did not advocate violence [ ] and [were] not . . . offensive enough to pose a security [r]isk." (Declaration at 5.)

Among the items Holley claims were confiscated was "The 120°," also called "The Book of Life," which Holley states is just as essential to the exercise of his faith as the Koran is to the Islamic faith, the Bible to the Christian faith and the Torah to the Jewish faith. (Docket Item No. 57, attachment 3, Memorandum Of Law In Opposition Of Defendants' Motion For Summary Judgment, ("Plaintiff's Brief"), at 23.) Holley states that "The 120°" and the 120 lessons and many degrees contained therein are the only means of spiritual guidance he has available to him as a VDOC inmate. In particular, Holley states that because the VDOC does not recognize the Nations of Gods and Earths as a religion, he has no ability to consult with religious advisors or clergy, he is not allowed to correspond with

others of his faith, and there are no group gatherings or religious meetings or services. (Plaintiff's Brief at 22-23.) The defendants do not dispute these facts.

Following the confiscation of his alleged religious literature, Holley covered the window of his cell and flooded his cell. After denying the ROSP officers' requests to uncover his window and blocking the tray slot to obstruct the officers' view of the cell, Holley was ordered to present himself at the tray slot to be restrained. After his initial refusal to cooperate, Holley complied with the officers' demands and was restrained. Holley was then placed in ambulatory restraints. Ambulatory restraints consist of handcuffs and leg shackles, which are double-locked. A box covers the keyhole of the handcuffs, and a waist chain is connected through the box to the leg shackles. While in ambulatory restraints, an inmate is clad only in a smock, which Holley described as a vest with Velcro straps. Holley remained in ambulatory restraints for approximately 48 hours. During this time, Holley's cell was stripped of all personal belongings, bedding and hygiene materials. The defendants maintain that it was necessary for Holley to remain in the ambulatory restraints for the two-day duration because he continued to exhibit disruptive behavior. However, Holley contends that he was not disruptive at any point after he initially submitted to be restrained. Furthermore, Holley claims that he was denied his mattress, eating utensils and bedding throughout the two-day period. The defendants claim that Holley refused his mattress and was provided with eating utensils.

On January 24, 2008, Holley submitted an application to be placed on the Common Fare Diet, a diet which satisfies the nutritional needs of inmates whose religious beliefs forbid the consumption of certain food items. On February 6, 2008, defendant Quentin Reynolds, representing the Institutional Classification

Authority, ("ICA"), held a hearing, which Holley attended, to decide whether to place him on the Common Fare Diet. Reynolds denied the application, citing that the Nation of Gods and Earths is not a religion recognized by VDOC. On February 19, 2008, Reynolds's decision was upheld by the warden of ROSP, defendant Tracy Ray. Subsequent to Ray's decision, defendant L.R. Montalbano, a security manager II with the VDOC Central Classifications Services Unit, reviewed Holley's request. She also denied the request, citing a lack of documentation provided by Holley to establish that his religion required the Common Fare Diet and the fact that the religion is not recognized by VDOC.

After exhausting his administrative remedies by filing internal grievances, Holley commenced this action pursuant to 42 U.S.C. § 1983. Holley alleged that the aforementioned actions violated his rights under the First, Eighth and Fourteenth Amendments of the United States Constitution, the Religious Land Use and Institutionalized Persons Act, ("RLUIPA"), the Virginia Constitution and Virginia Law. The defendants' Motion argues that summary judgment should be granted because: the defendants are immune from suit under 42 U.S.C. § 1983 in their official capacities, the materials confiscated were those of a security threat group and not a religion, the confiscation of the materials did not cause a substantial burden on Holley's ability to practice his religion, Holley did not allege facts pertaining to the First and Fourteenth Amendments of the United States Constitution or the Virginia Constitution, the ambulatory restraints were properly used, Holley did not establish a sincere belief in his religion or a substantial burden by the denial of the Common Fare Diet and monetary damages are barred by 42 U.S.C. § 1997e(e).[2]

_____

[2] As stated above, the defendants' claim of qualified immunity was previously denied; thus, this court need not consider it.

*II. Analysis*

*A. Motion For Summary Judgment Standard*

With regard to a motion for summary judgment, the standard for review is well-settled. The court should grant summary judgment only when the pleadings, responses to discovery and the record reveal that "there is no genuine issue as to any material fact and ... the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986). A genuine issue of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

In considering a motion for summary judgment, the court must view the facts and the reasonable inferences to be drawn from the facts in the light most favorable to the party opposing the motion. *See Anderson*, 477 U.S. at 255; *Matsushita*, 475 U.S. at 587. Thus, the court will view the facts and inferences in the light most favorable to Holley on the defendants' motion for summary judgment. In order to be successful on a motion for summary judgment, a moving party "must show that there is an absence of evidence to support the non-moving party's case" or that "the evidence is so one-sided that one party must prevail as a matter of law." *Lexington-South Elkhorn Water Dist. v. City of Wilmore*, *Ky.,* 93 F.3d 230, 233 (6th Cir. 1996).

*B.  42 U.S.C. § 1983 Official Capacity Immunity*

In the Defendants' Memorandum Of Law In Support Of Defendants' Motion For Summary Judgment, ("Defendants' Brief"), defendants Montalbano, Reynolds, Gene Johnson, Director of VDOC, Sergeant T. Adams and Gary Bass, Chief of Operations for Offender Management Services, who all are sued in their official and individual capacities, claim that "insofar as [they] are sued in their official capacities, they are immune from suit...." (Defendants' Brief at 4.)  State officers sued in their official capacities for monetary damages are not "'persons'" under the meaning of § 1983, because they assume the identity of the state that employs them.  *See Hafer v. Melo*, 502 U.S. 21, 27 (1991) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)).  However, a state official sued in his or her individual capacity "fits comfortably within the statutory term 'person.'"  *Hafer*, 502 U.S. at 27 (quoting *Will,* 491 U.S. at 71 n.10).  Moreover, a state officer sued in his or her official capacity for injunctive relief would be a "person" under § 1983, due to the fact that "'official-capacity actions for prospective relief are not treated as actions against the State.'" *Will*, 491 U.S. at 71 n. 10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)).  Accordingly, I recommend that the court grant the Motion to the extent that Holley has sued defendants Johnson, Adams, Bass, Reynolds and Montalbano in their official capacities for monetary damages. I further recommend that the court deny the Motion to the extent that Holley has sued the defendants in their individual capacities or for injunctive relief.

*C. Confiscation of the Five Percenter Literature*[3]

*1. First Amendment*

The defendants claim that they are not liable under the First Amendment to the United States Constitution for the confiscation of Holley's Five Percenter materials, because the group is classified as a security threat group rather than a religion. (Defendants' Brief at 6.) The defendants claim that they were justified in holding that the Five Percenters were a security threat group and contend that the confiscation of the material was rationally related to legitimate penological interests. (Defendants' Brief at 6.) Holley has vehemently claimed throughout this action that the Nation of Gods and Earths is a religion and not a gang, and in his Declaration stated that, "my materials were [r]eligious in nature, [were] not [r]acially inflammatory, did not advocate violence ... and [were] not ... offensive enough to pose a security [r]isk." (Declaration at 5.)

The parties' bitter opposition over whether the Five Percenters are a religiously affiliated group is not an issue the court is inclined to weigh. As the Fourth Circuit did in the case of *In Re Long Term Admin. Segregation of Inmates Designated as Five Percenters*, we will assume, for argument's sake, that the Nation of Gods and Earths is, in fact, a religion. *See* 174 F.3d 464, 468 (4th Cir. 1999) ("Although the parties vigorously dispute whether the Five Percenters even constitute a religious group, the district court did not attempt to resolve this

---

[3]The defendants relevant to this issue are: Adams, who Holley alleges refused to return the confiscated material and would not allow him to mail it to family; Johnson, for creating the policy that was used to confiscate the material; Ray, who endorsed the confiscation; and Larry Huffman, who also endorsed the confiscation. (Holley's Complaint, Docket Item No. 1.)

question.  Rather, the court assumed – as do we – that the Five Percenters are a religious group entitled to First Amendment protection.  We thus avoid the 'difficult and delicate task' of examining the nature and sincerity of the inmates' professed beliefs." (quoting *Thomas v. Review Bd*., 450 U.S. 707, 714 (1981)).

The defendants have offered evidence that the confiscation of Holley's Five Percenter material was pursuant to VDOC's classification of the Five Percenters as a security threat group.  The defendants correctly contend that designating the Five Percenters as a security threat group does not, in and of itself, violate the First Amendment.[4]  *See In Re Five Percenters*, 174 F.3d at 470-71.  The Fourth Circuit, ruling on a challenge to the constitutionality of classifying Five Percenters as a security threat group, has stated that the South Carolina Department of Corrections' decision to classify Five Percenters as a security threat group was proper.  *See In Re Five Percenters*, 174 F.3d at 471. The court noted that when reviewing actions of a prison, great deference is to be given to the decisions of the prison officials, especially when prison order is at stake.  *See In Re Five Percenters*, 174 F.3d at 468-69.  Under that reasoning, the standard of review to be applied to First Amendment claims in a prison setting is the rational basis test, i.e. whether the action complained of was rationally related to legitimate penological interests.  *See In Re Five Percenters*, 174 F.3d at 468 ('"[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."' (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

---

[4] While Holley does not expressly contend that the classification is a violation of the First Amendment, he seeks, as a remedy, the alteration of the classification.  *See* Holley's Complaint, (Docket Item No. 1).  Further, he states that the classification is a disputed fact. *See* Plaintiff's Statement of Disputed Facts, (Docket Item No. 57, attachment 2.) Thus, the court will discuss the issue.

Here, arguing similar justifications as the *In Re Five Percenters* case, the defendants have produced evidence that Five Percenters have been disruptive in nature, jeopardize the safe operation of VDOC facilities, recruit gang members and are a hate group. (Defendants' Brief at 8.) Thus, the defendants assert that classifying the Five Percenters as a security threat group is rationally related to the orderly administration of their prison. As mentioned above, weighing this very issue, the Fourth Circuit found that classifying the Five Percenters as a security threat group was rationally related to legitimate penological interests. *See In Re Five Percenters*, 174 F.3d at 469. That reasoning holds true in this case. Holley disagrees with this notion, stating that the defendants' justifications for considering the Five Percenters a security threat group are unsupported by facts. However, such a decision is entitled to judicial deference. *See In Re Five Percenters*, 174 F.3d at 469 ("The rationale for judicial deference is greatest when the maintenance of prison order is at stake.") In light of the deference required by the Fourth Circuit's decision in the case of *In Re Five Percenters* and the evidence produced by the defendants, I find the defendants have demonstrated a legitimate government objective and have demonstrated a rational relationship between the objective and the means chosen to achieve that objective. *See Hines v. S.C. Dep't of Corrs.*, 148 F.3d 353, 358 (4th Cir. 1998.) Therefore, insofar as Holley's Complaint may be interpreted as asserting that the designation of the Five Percenters as a security threat group violates his rights under the free exercise clause of the First Amendment, I recommend the court enter summary judgment in the defendants' favor.

Next, I must determine whether the confiscation of the Five Percenter material was a violation of Holley's First Amendment rights. I find that this action, too, was rationally related to legitimate penological interests. *See In Re Five*

*Percenters*, 174 F.3d at 468. Because the confiscated material was Five Percenter literature, which is not disputed by either party, the material is that of a security threat group. As this court has previously held, the confiscation of material relating to a security threat group, in particular, the Five Percenters, does not violate the First Amendment because the act bears a rational relationship to a legitimate state interest. *See Cartwright v. Meade*, No. 7:08cv00250, 2008 WL 2944668, at *2 (W.D. Va. July 31, 2008). Accordingly, I recommend that the court grant the Motion and issue summary judgment in the defendants' favor on this claim.

### 2. RLUIPA

Holley further alleges that the confiscation of his Five Percenter materials violated his rights under the RLUIPA. The defendants argue that this claim is without merit because Holley cannot show a substantial burden on his religious exercise. (Defendants' Brief at 6-8.) Alternatively, the defendants argue that any burden imposed is the least restrictive alternative means of achieving a compelling governmental interest. (Defendants' Brief at 8-9.) In his brief, Holley asserts that the confiscation of his materials prevented him from being able to study his religion. (Plaintiff's Brief at 22.) Holley argues that some form of "religious guidance is needed to achieve any level of spiritual or personal fulfillment." (Plaintiff's Brief at 22.) Further, Holley states that he has been denied access to any materials associated with his chosen religion. Holley also states that because VDOC does not recognize the Nation of Gods and Earths as a religious group, he cannot correspond with a religious advisor, he cannot receive materials related to the group, he cannot attend religious meetings, and he cannot receive a diet

conforming to his religious beliefs. "[S]imply put, he has no ability whatsoever to practice and exercise his religious beliefs...." (Plaintiff's Brief at 23.)

Under the RLUIPA, the government cannot place a substantial burden on the religious exercise of a person, unless the burden "(A) is in furtherance of a compelling governmental interest; and (B) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C.A. § 2000cc(a)(1) (West 2003). "If a plaintiff produces prima facie evidence" of a RLUIPA violation, "the government shall bear the burden of persuasion on any element of the claim, except that the plaintiff shall bear the burden of persuasion on whether the [policy] or government practice that is challenged by the claim substantially burdens the plaintiff's exercise of religion." 42 U.S.C.A. § 2000cc-2(b) (West 2003). "As to these elements on which it bears the burden of proof, a government is only entitled to summary judgment if the proffered evidence is such that a rational factfinder could only find for the government." *Smith v. Ozmint*, 578 F.3d 246, 250 (4th Cir. 2009) (citing *Gooden v. Howard County, Md.*, 954 F.2d 960, 971 (4th Cir. 1992)) ("[W]here . . . the movant would have the burden of persuasion at trial, the summary judgment burden is a correspondingly heavy one."). Accordingly, to prevail on his RLUIPA claim, Holley must show that the practice of his religion was substantially burdened. Once Holley makes this showing, the burden shifts to the defendants to show a compelling governmental interest and that they used the least restrictive means of achieving that compelling interest.

Furthermore, courts have noted that the "inquiry under RLUIPA is more rigorous than under the First Amendment." *Lovelace v. Lee*, 472 F.3d 174, 188 n.3 (4th Cir. 2006); *Cartwright*, 2008 WL 2944668, at *2 n.2. "[A] substantial burden is one that put[s] substantial pressure on an adherent to modify his behavior and to

violate his beliefs, or one that forces a person to choose between following the precepts of [his] religion ... [or] abandoning one of the precepts of [his] religion ...." *Lovelace*, 472 F.3d at 187 (internal citations omitted); *see also Thomas,* 450 U.S. at 718. However, the court "must not judge the significance of the particular belief or practice in question." *Lovelace*, 472 F.3d at 187 n.2; *see also Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005) (RLUIPA "bars inquiry into whether [the] belief or practice is 'central' to a prisoner's religion"); 42 U.S.C.A. § 2000cc-5(7)(A) (West 2003) (religious exercise is "any exercise, whether or not compelled by, or central to, a system of religious belief").

In similar circumstances, this court, in dicta in the *Cartwright* case,[5] opined that the confiscation of Five Percenter material would not impose a substantial burden on the plaintiff's religious exercise under the RLUIPA. *See* 2008 WL 2944668, at *2 n.2. The court found that the RLUIPA would not have been violated because the plaintiff did not allege that he could not exercise religious practices, pray, study other religious materials, fast or partake in a religious diet. *See Cartwright*, 2008 WL 2944668, at *2 n.2. Holley, however, has presented evidence that he cannot speak with an advisor of the Nation of Gods and Earths, attend religious meetings, be placed on the Common Fare Diet, receive or possess any religious periodicals or books or correspond with anyone concerning his religion. (Plaintiff's Brief at 23.) Holley has asserted that the only way he had to exercise his religious belief was by studying the religious materials, including "The 120°" confiscated from his cell.

---

[5] The issue of whether the RLUIPA was violated was not before the court.

Holley has alleged that he has been forced to modify his behavior, go against his beliefs and abandon a precept of his religion. *See Lovelace,* 472 F.3d at 187; *Thomas*, 450 U.S. at 718. Holley claims that he had to abandon a tenet of his religion, namely studying his religious material, which caused a violation of his beliefs. (Plaintiff's Brief at 26-31.) Holley claims that, at the core of his faith, is the need to read his literature. (Plaintiff's Brief at 31.) Therefore, Holley has alleged facts, which if believed and proven, could establish a substantial burden. Thus, the court must address whether the burden is the least restrictive means of furthering a compelling government interest. *See* 42 U.S.C. § 2000cc(a)(1).

The defendants contend that prohibiting the possession of material from a security threat group is the least restrictive means of providing for a safe and secure prison. (Defendants' Brief at 8.) Further, the defendants claim that the material is not religious in nature, and it is within their discretion to prohibit the possession of such material. (Defendants' Brief at 8-9.) Prison safety and maintaining discipline are undeniably compelling governmental interests. *See generally Johnson v. California*, 543 U.S. 499, 512 (2005); *Hines*, 148 F.3d at 358. Thus, the decisive inquiry is whether prohibiting Holley's possession of literature from the Five Percenters is the least restrictive means of ensuring prison safety and discipline. The defendants assert that the denial of material to Holley is the least restrictive means, noting that they do not allow inmates to possess any "gang" material. (Defendants' Brief at 8.) Further, the defendants argue that such decision is within their discretion. (Defendants' Brief at 9.) The defendants, however, have offered no evidence to show that their actions were the least restrictive means of achieving the compelling state interest. *See* 42 U.S.C. § 2000cc(a)(1). The evidence before the court shows that the VDOC has an outright ban on all Five Percenter material, whether the material actually poses a security risk or not. At this juncture, it would

be improper for the court to speculate as to whether less restrictive means of achieving the interest are available, but it is clear that the defendants have not established that there is no less restrictive means. Therefore, I recommend that the court deny the Motion as to Holley's claims that the confiscation of his materials violated the RLUIPA.

### 3. Miscellaneous Claims

In his Complaint, Holley also asserts that the confiscation of his Five Percenter material violated the Equal Protection and Due Process Clauses of the Fourteenth Amendment of the United States Constitution, the Virginia Constitution and Virginia state law. (Complaint at 31-32.) The defendants argue that they are entitled to summary judgment on these claims because Holley has not asserted facts or arguments to validate them. (Defendants' Brief at 9.)

The Equal Protection Clause "prohibit[s] any state from denying a person equal protection through the enactment, administration, or enforcement of its laws and regulations." *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 818 (4th Cir. 1995). In order to establish a violation of the Equal Protection Clause, Holley must show that he was intentionally discriminated against. *See Sylvia Dev. Corp.*, 48 F.3d at 819. More specifically, Holley must show he was treated differently than those similarly situated because of such discrimination. *See Morrison v. Garraghty*, 239 F.3d 648, 654 (2001). Holley claims that Five Percenters are intentionally discriminated against on the basis of their faith. (Plaintiff's Brief at 40-41.) In particular, Holley alleges that Five Percenters are treated differently than inmates of other religions, explaining that they do not experience the privileges that other faiths are afforded, i.e. access to religious materials, religious meetings and an

advisor. (Plaintiff's Brief at 40-41.) While there is evidence before the court that Five Percenters are treated differently than members of other religions, there is no evidence that Five Percenters are treated differently than members of other security threat groups. "There is nothing in the Constitution which requires prison officials to treat all inmate groups alike where differentiation is necessary to avoid an imminent threat of institutional disruption or violence." *Jones v. N.C. Prisoners' Labor Union, Inc.,* 433 U.S. 119, 136 (1977) (quoted in *In Re Five Percenters*, 174 F.3d at 471.) As stated above, the standard of review to be applied is the rational basis test. *See Lovelace*, 472 F.3d at 199 (quoting *Turner,* 482 U.S. at 89.) Also, as stated above, the defendants have demonstrated that the designation of the Five Percenters as a security threat group is rationally related to the legitimate state interest of ensuring prison security. Therefore, I recommend that the Motion be granted with respect to Holley's claim that the confiscation of his materials violated his equal protection rights.

Holley claims that the defendants' actions in confiscating his religious material violates his due process rights. Due process includes both procedural and substantive components. *See Plyler v. Moore,* 100 F.3d 365, 374 (4th Cir. 1996) (citing *Love v. Pepersack*, 47 F.3d 120, 122 (4th Cir. 1995)). In the Complaint and Plaintiff's Brief, Holley does not specify whether he is alleging a violation of his procedural due process rights or his substantive due process rights. "In order to prevail on a procedural due process claim, the [inmate] must show that [he has] a property interest ... of which [he has] been deprived without due process of law.... Substantive due process is far narrower in scope than procedural due process... and requires the [inmate] to show not only [has he] been deprived of a property interest, but also that the action causing the deprivation 'falls so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency....'"

*Plyler*, 100 F.3d at 374 (quoting *Sylvia Dev. Corp.,* 48 F.3d at 826) (internal citations omitted). It is important to note that the Fourth Circuit, affirming a prior decision of this court, has held that the confiscation of an inmate's contraband does not violate due process. *See Hanvey v. Blankenship*, 631 F.2d 296, 297 (4th Cir. 1980); *see* VA. CODE ANN. 53.1-26 (2009 Repl. Vol.). In this case, the defendants argue that the materials confiscated from Holley were materials associated with a security threat group, and, therefore, were contraband, which Holley had no right to possess. Based on the court's ruling on Holley's RLUIPA claim above, the court cannot find at this point that Holley had no right to possess these materials. Thus, the court will assume that Holley had a property interest in the materials. There is no dispute that by confiscating those materials, the defendants have deprived Holley of that property interest. There also is no dispute, however, that Holley has had available to him – and he has used – adequate process to address the taking.

In particular, Holley, in his Complaint, concedes that he filed informal and formal grievances regarding the taking of his religious materials through a Level III review by Johnson, the Director of VDOC. After he exhausted his administrative remedies, he filed suit in this court. While Holley is dissatisfied with the outcome of the process afforded him, there is no dispute that he has not been denied procedural due process. Also, the undisputed facts of this case do not support a finding that the defendants' acts fall so far outside of the outer limits of legitimate governmental action that no process could cure the deficiency. Therefore, I recommend the court grant the Motion as to Holley's due process claims.

Holley also claims that the confiscation of his materials violated Article I §§ 11 and 16 of the Virginia Constitution, which are Virginia's due process and freedom of religion clauses. Virginia courts have held that the corresponding

provisions of the Virginia Constitution extend no further than their federal counterparts. *See Lilly v. Commonwealth of Va.*, 647 S.E.2d 517, 522 (Va. Ct. App. 2007.) Therefore, for the reasons discussed earlier with regard as to why those rights provided by United States Constitution were not violated, Holley's state constitutional rights also were not violated.

Finally, Holley claims that defendant Adams unlawfully converted his literature into state property by refusing to return it. (Complaint at 32.) Under Virginia law, a conversion occurs after "the *wrongful* assumption or exercise of the right of ownership over goods or chattels belonging to another in denial of or inconsistent with the owner's rights." *Economopoulos v. Kolaitis*, 528 S.E.2d 714, 719 (Va. 2000) (citing *Universal C.I.T. Credit Corp. v. Kaplan*, 92 S.E.2d 359, 365 (Va. 1956) (emphasis added). Based on the court's ruling on Holley's RLUIPA claim, the court cannot find at this point that Holley had no right to possess these materials. That being the case, there is a genuine issue of material fact as to whether the taking was wrongful. Therefore, I recommend that the court deny the Motion on this ground.

*D. Use of Ambulatory Restraints[6] [7]*

### 1. Eighth Amendment

The defendants contend that Holley's placement in ambulatory restraints for approximately 48 hours was not a punishment. (Defendants' Brief at 14.) Rather, the defendants contend that the ambulatory restraints were properly used to control Holley's continued disruptive behavior. (Defendants' Brief at 14.) Further, the defendants argue that Holley cannot meet the elements necessary to succeed on a claim based upon a violation of the Eighth Amendment to the United States Constitution. (Defendants' Brief at 14-18.) On the other hand, Holley contends that the ambulatory restraints were excessive, because his behavior had subsided by the time he was placed in them, and he remained well-behaved during the 48-hour time frame. (Declaration at 5-6.)

Holley challenges both the use of the restraints and his conditions of confinement while in restraints. The Eighth Amendment prohibits the infliction of cruel and unusual punishment on an individual convicted of a crime. *See* U.S. CONST. amend. VIII.[8] The amendment protects not only the sentence imposed upon

---

[6]The defendants relevant to this action are Rowlette, Captain McCoy and Sergeant Gilmore. The defendants move that the claims against McCoy be dismissed because he was not on duty during the time the events complained of took place. (Defendants' Brief at 18.) In his Amended Complaint, Holley substituted defendant Rowlette for McCoy. Thus, McCoy should be dismissed from the case.

[7]Defendants did not move for summary judgment on Holley's claims that the use of the ambulatory restraints violated his rights under the Virginia Constitution and Virginia law; thus, those claims will remain.

[8] The Eighth Amendment applies to the states pursuant to the Fourteenth Amendment of the United States Constitution. *See Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991).

an individual, but also the treatment and conditions of prisoners during incarceration. *See Shakka v. Smith*, 71 F.3d 162, 165 (4th Cir. 1995).

In order to establish that his conditions were improper, Holley must demonstrate "that 'the deprivation of [a] basic human need was *objectively* 'sufficiently serious,' and that '*subjectively* 'the officials act[ed] with a sufficiently culpable state of mind.'''" *Shakka*, 71 F.3d at 166 (quoting *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993)). The only deprivations sufficient to be "cruel and unusual" are those that deny the "minimal civilized measure of life's necessities." *Shakka*, 71 F.3d at 166 (citing *Wilson*, 501 U.S. at 298). Thus, only extreme deprivations are adequate to satisfy the objective component mentioned above. *See Shakka*, 71 F.3d at 166; *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). "[I]n order to withstand summary judgment on an Eighth Amendment challenge[, an inmate] must produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions." *Strickler*, 989 F.2d at 1381. The subjective component is fulfilled by showing deliberate indifference by prison officials, which requires a prison official to know of and disregard the objectively serious conditions or risk of harm. *See Shakka*, 71 F.3d at 166; *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Holley alleges that during the time he was in ambulatory restraints he was deprived of personal belongings, including hygiene items, he did not have a mattress or bedding, was barefoot and clothed only in a smock, was denied toilet paper and he did not receive eating utensils with his meals. (Plaintiff's Brief at 55-61). Defendants contest these allegations. (Defendants' Brief at 12-13). The defendants explain that, because of potential for abuse, inmates are placed in a "stripped cell" while in ambulatory restraints. However, the defendants contend that

periodically the water in the cell is turned back on and the inmate can momentarily receive hygiene materials. Also, the defendants allege that each night the inmate is offered a mattress, to be removed from the cell the following morning. The defendants claim that each night Holley was offered his mattress, and he refused it. Holley contests this point, claiming that he repeatedly requested a mattress, which was denied. Further, the defendants assume that Holley was given a spork with each meal, noting that there was no indication that he was denied eating utensils. Considering a factually analogous case, this court found that temporarily being placed in a stripped cell is not a constitutional violation. *See Johnson v. O'Brien*, Case No. 7:08cv00022, 2008 WL 2199275, at *5 (W.D. Va. May 27, 2008). In that case, as here, the plaintiff did not allege serious or significant injuries resulting from the complained of conditions. *See Johnson*, 2008 WL 2199275, at *5. Thus, due to a lack of evidence of any injury suffered, the Motion should be granted with respect to Holley's claim that the conditions of his confinement while he was in ambulatory restraints violated the Eighth Amendment.

The Eighth Amendment also prohibits prison officials from using force unnecessarily and wantonly to inflict pain. *See Whitley v. Albers*, 475 U.S. 312, 319 (1986). With respect to the use of the ambulatory restraints, in order to determine if the prison officials used improper force or punishment, the court must look at the objective nature of the force used, the resulting harm and the subjective intent of the officers. *See Hudson*, 503 U.S. at 7; *Moore v. Miller*, Case No. 7:08cv00614, 2009 WL 113258, at *2 (W.D. Va. Jan. 15, 2009); *Johnson*, 2008 WL 2199275, at *3. The most pertinent inquiry under the subjective prong is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. In making this determination, the court must balance such factors as the need for the application of force, the

relationship between the need and the amount actually applied and the extent of the injury inflicted.  *See Hudson*, 503 U.S. at 7.

Previously, Fourth Circuit precedent, using the Supreme Court's decision in *Hudson* as a basis, dictated that in order to prevail on an excessive force claim, the plaintiff must prove more than *de minimis* injury. *See Norman v. Taylor*, 25 F.3d 1259, 1263 (4th Cir. 1994) (overruled); *Riley v. Dorton*, 115 F.3d 1159, 1166-68 (4th Cir. 1997) (overruled). However, the Supreme Court recently held that "[i]n requiring what amounts to a showing of significant injury in order to state an excessive force claim, the Fourth Circuit has strayed from the clear holding of this Court in *Hudson*."  *Wilkins v. Gaddy*, _____ U.S. _____, 2010 WL 596513, at *2 (Feb. 22, 2010). The Court went on to say that the "Fourth Circuit's strained reading of *Hudson* is not defensible." *Wilkins*, 2010 WL 596513, at *3. The Supreme Court explained that its holding in *Hudson* did not stand for the proposition that a "certain quantum of injury [needed to be] sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins*, 2010 WL 596513, at *2 (quoting *Hudson*, 503 U.S. at 7). Further, the Court opined that requiring a showing of injury would permit any punishment, "no matter how diabolic or inhuman," absent some quantum of injury.  *Wilkins*, 2010 WL 596513, at *2 (quoting *Hudson*, 503 U.S. at 9).  The Court did not want an inmate, who was the victim of excessive force, to lose the ability to pursue an excessive force claim because of "the good fortune to escape without serious injury." *Wilkins*, 2010 WL 596513, at *3. The Court did note, however, that the absence of serious injury is not irrelevant. The extent of injury could indicate whether the use of force was thought to be necessary, and it could provide an indication of the amount of force actually applied. *See Wilkins*, 2010 WL 596513, at *2. A "push or shove," without a resulting discernible

injury, almost always fails to state a claim for excessive force because, "'[t]he Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind.'" *Wilkins*, 2010 WL 596513, *2 (quoting *Hudson*, 503 U.S. at 9).

This court does not question the general use of ambulatory restraints in a manner consistent with the principles discussed above. What is troubling in the present case is the fact that Holley was in the restraints, which are supposed to be used only to restore order, for approximately 48 hours. The defendants contend that this was necessary to control Holley's unruly behavior. (Defendants' Brief at 14.) Initially, Holley was placed in ambulatory restraints after he flooded his cell, covered the window into his cell and refused to comply with instructions from prison officers. (Defendants' Brief at 14.) Holley does not dispute this sequence of events and states that he eventually complied with the officers' demands to submit to restraints. (Plaintiff's Brief at 53-54.) The subsequent events are disputed. Holley claims that once he was placed in ambulatory restraints he was not disruptive. Specifically, Holley disputes the defendants' claims that he continued to use vulgar language and threaten the prison staff. (Declaration at 6.) On the other hand, the defendants claim that Holley was continually disruptive, noting that it was so severe that on least 10 occasions it had to be documented, that he banged his restraints in the cell, used profanity towards the staff and threatened the staff with bodily harm. (Defendants' Brief at 14.)

The defendants argue not only that the ambulatory restraints were necessary for safety, but also that there was no resulting harm. (Defendants' Brief at 15-16.) The defendants contend that a nurse evaluated the restraints when they were placed

on Holley and after removal, and while Holley complained of a swollen wrist, no injuries were observed. (Defendants' Brief at 16.) Further, Holley declined subsequent medical care and did not voice any further complaints. (Defendants' Brief at 16.) Holley insists he did not pursue medical care because of the cost, and he asserts that he experienced frustration, humiliation and pain. (Plaintiff's Brief at 55, 65.)

As discussed above, resulting injury, while a factor to consider, is no longer decisive in an excessive force case. *See Wilkins*, 2010 WL 596513, at *2-3. Thus, summary judgment cannot be properly granted merely on the basis of a lack of resulting injury. *See Wilkins*, 2010 WL 596513, at *4. Accordingly, the proper inquiry is whether the ambulatory restraints were administered "in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins*, 2010 WL 596513, at *2 (quoting *Hudson*, 503 U.S. at 7). In this case, the parties' evidence presents a dispute in fact as to whether the *continued* use of the ambulatory restraints was to "maintain or restore discipline" or was punitive. As such, I find that the Motion should be denied as to Holley's claim of excessive force under the Eighth Amendment.

### 2. Due Process

Holley further claims that the use of ambulatory restraints and the conditions while he was in restraints violated the Due Process Clause of the Fourteenth Amendment. This court has previously held that a prisoner does not have a protected liberty interest in particular "housing" arrangements while incarcerated. *See Johnson*, 2008 WL 2199275, at *6; *Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991). It was noted that inmates' interests are limited to "'the freedom from

restraint, which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Johnson*, 2008 WL 2199275, at *6 (citations omitted). Considering the very issue in the present case, this court found that being placed in ambulatory restraints, and the resulting conditions thereof, do not violate an inmate's due process rights. *See Johnson*, 2008 WL 2199275, at *6-7. Accordingly, the Motion should be granted as it pertains to Holley's claim of the violation of his due process rights by the use of ambulatory restraints.

### E. Common Fare Diet[9]

Holley claims that his rights under the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, the RLUIPA and Article I §§ 11 and 16 of the Virginia Constitution were violated when the defendants denied his application to participate in the Common Fare Diet. The defendants contend that their actions did not violate Holley's rights because the Nation of Gods and Earths is not a religion, his beliefs are not sincerely held, he was not substantially burdened, he did not show that Five Percenters require the Common Fare Diet or that he was treated differently from other inmates. Yet again, the defendants do not move for summary judgment on the claims under the Virginia Constitution and Virginia law, so such will not be granted.

Holley's alleged violation of his Fourteenth Amendment rights can be easily dispensed. Regarding his equal protection rights, as earlier discussed, Holley must show that he was treated differently from those similarly situated because of intentional discrimination. *See Morrison*, 239 F.3d at 654. While his request to

---

[9]The defendants relevant to this claim are Reynolds, Ray, Montalbano and Bass.

receive a Common Fare Diet was denied, Holley has not provided any evidence that his request for the diet was treated any differently than any other request. Without a showing that he was treated differently, Holley cannot show that he was treated differently than those similarly situated. Moreover, the undisputed evidence is that Holley was not denied the Common Fare Diet only because he was a Five Percenter. Defendant Montalbano, who had the final decision, noted that Holley did not provide any documentation to prove his religion required the Common Fare Diet. (Defendants' Brief at 19-20.) Notably, Holley also has not provided any evidence to this court that his religion requires any dietary restrictions.

The court will now turn to Holley's claims based on the Free Exercise Clause of the First Amendment and the RLUIPA. Even though the RLUIPA provides more protection to Holley's free exercise rights than does the First Amendment, these claims can be discussed together because they both require proof of a substantial burden, which Holley has not shown. *See Lovelace*, 472 F.3d at 199-200. As stated above, under the RLUIPA, the government cannot place a substantial burden on the religious exercise of a person, unless the burden "(A) is in furtherance of a compelling governmental interest; and (B) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc(a)(1). The First Amendment free exercise inquiry "asks whether [the] government has placed a substantial burden on the observation of a central religious belief or practice and, if so, whether a compelling governmental interest justifies the burden." *Hernandez v. C.I.R.,* 490 U.S. 680, 699 (1989).

In the Complaint, Holley states that the denial of the Common Fare Diet caused a significant and severe burden to his religious practice. (Complaint at 32.) However, in his Declaration and the Plaintiff's Brief, Holley makes no such

argument. Also, Holley has provided the court no evidence that a special diet is a tenet of his religious beliefs. The court cannot infer a substantial burden based solely on a simple allegation without any supporting facts. The defendants also point out that Holley claims he began seriously practicing his religion more than three years ago, and until recently, VDOC's vegetarian diet has sufficed for him. (Defendants' Brief at 21.) Holley has failed to show why the vegetarian diet no longer conforms to his beliefs. Accordingly, Holley has failed to show that he was substantially burdened by being denied the Common Fare Diet. The Motion should be granted as to Holley's claims under federal law regarding the denial of the Common Fare Diet.

## F. Money Damages

Lastly, the defendants claim that Holley's claims for monetary damages are barred by 42 U.S.C. § 1997e(e), which provides: "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." (Defendants' Brief at 24.) Other circuits have held that this statute is inapplicable to nominal and punitive damages under certain circumstances. *See Hughes v. Lott*, 350 F.3d 1157, 1162 (11th Cir. 2003). However, circuits considering similar circumstances have found it applicable. *See Alexander v. Tippah County, Miss.*, 351 F.3d 626, 631 (5th Cir. 2003) (considering alleged Eighth Amendment violation); *Searles v. Van Bebber*, 251 F.3d 869, 876-877 (10th Cir. 2001) (considering alleged First Amendment violation). While the Fourth Circuit has not yet defined the exact scope of 42 U.S.C. § 1997e(e), this court has previously denied money damages for lack of physical injury. *See Ashann-Ra v. Commonwealth of Virginia*, 112 F. Supp. 2d 559, 566 (W.D. Va. 2000). Without

binding circuit precedent stating otherwise, the undersigned is not inclined to stray from this court's prior holding and the plain language of the statute. In this case, Holley has produced no evidence of any physical injury. Therefore, I recommend that the Motion be granted insofar as Holley seeks any monetary damages.

## PROPOSED FINDINGS OF FACT AND
## CONCLUSIONS OF LAW

As supplemented by the above summary and analysis, the undersigned now submits the following formal findings, conclusions and recommendations:

1.      State officers sued in their official capacities for monetary damages are not "persons" under the meaning of 42 U.S.C. § 1983; thus, they cannot be sued for monetary damages;

2.      State officers can be sued in their individual capacities for monetary damages and in their official capacities for injunctive relief;

3.      The Motion should be granted to the extent that Holley has sued the defendants in their official capacities for monetary damages and denied to the extent that Holley has sued the defendants in their individual capacities or in their official capacities for injunctive relief;

4.      The court assumes that the Nation of Gods and Earths, "Five Percenters," is a religion entitled to First Amendment protection;

5.      Designation of the Five Percenters by VDOC as a security threat group did not violate Holley's First Amendment rights to free exercise of religion, in that the designation was rationally related to legitimate penological interests;

6.      The confiscation of Holley's Five Percenters material did not violate Holley's First Amendment right to the free exercise of religion because it was rationally related to legitimate penological interests;

7.      The Motion should be granted insofar as Holley claims the defendants violated his First Amendment right to free exercise of

religion by designating the Five Percenters as a security threat group or by confiscating his Five Percenters material;

8. Under the RLUIPA, the government cannot place a substantial burden on an individual's religious exercise, unless the burden "(A) is in furtherance of a compelling governmental interest; and (B) is the least restrictive means of furthering that compelling governmental interest[;]"

9. Holley has produced adequate evidence showing that the confiscation of his religious literature placed a substantial burden on the free exercise of his religion under the RLUIPA;

10. Prison safety is a compelling governmental interest;

11. There is a genuine issue of material fact regarding whether prohibiting Holley from possessing the materials in question is the least restrictive means of achieving this compelling governmental interest;

12. The Motion should be denied insofar as Holley claims the defendants' confiscation of his materials violated his rights under the RLUIPA;

13. Holley has not produced any evidence to show that he was treated differently than members of other security threat groups, and, as such, cannot establish an equal protection violation;

14. The undisputed facts show that Holley has been afforded procedural due process on his claims related to the confiscation of his religious materials;

15. The undisputed facts show that the defendants' acts in confiscating Holley's religious material did not violate Holley's substantive due process rights;

16. The Motion should be granted insofar as Holley claims the confiscation of his materials violated his equal protection or due process rights or his rights under the Virginia Constitution;

17. The Motion should be denied on Holley's Virginia state law conversion claim because a genuine issue of material fact exists;

18. The due process and freedom of religion clauses of the Virginia Constitution extend no further than their federal counterparts;

19. Defendant McCoy should be dismissed from the case as he did not play a role in the alleged misconduct;

20. The undisputed facts show that Holley did not suffer any injury as a result of his conditions of confinement while in ambulatory restraints;

21. The Motion should be granted insofar as Holley claims the conditions of confinement while in ambulatory restraints violated his rights under the Eighth Amendment;

22. The Motion should be denied insofar as Holley claims the use of ambulatory restraints for 48 hours violated his rights under the Eighth Amendment because there is a genuine issue of material fact;

23. The Motion should be granted insofar as Holley claims that the use of ambulatory restraints violated his due process rights;

24. Denying Holley the Common Fare Diet did not violate the Equal Protection Clause, because he did not produce evidence that he was treated differently than those similarly situated;

25. Holley's First Amendment rights and his rights under the RLUIPA were not violated by being denied the Common Fare Diet because he has not produced evidence that this denial placed a substantial burden on his religion;

26. The Motion should be denied insofar as Holley claims the denial of the Common Fare Diet violated his constitutional rights or his rights under the RLUIPA;

27. 42 U.S.C. § 1997e(e) bars prisoners from bringing a claim for money damages absent a prior showing of physical injury; and

28. The Motion should be granted as to Holley's claim for monetary damages because Holley has not produced evidence of physical injury.

## RECOMMENDED DISPOSITION

For the reasons detailed in this Report and Recommendation, I hereby recommend that the court grant the Defendants' Motion in part, and deny the Defendants' Motion in part.

## **Notice to Parties**

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed finding or recommendation to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence to recommit the matter to the magistrate judge with instructions.

Failure to file written objection to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the Honorable Glen E. Conrad, United States District Judge.

The Clerk is directed to send copies of this Report and Recommendation to all counsel of record and all unrepresented parties.

DATED: March 16, 2010.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE